# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | **ORDER DENYING DEFENDANT** |
| Plaintiff, ) | **WALLI'S THIRD MOTION TO** |
| ) | **DISMISS** |
| vs. ) | |
| ) | Case No. 1:06-cr-059 |
| Carl Kenneth Kabat, Gregory Irwin ) | |
| Boertje-Obed, and Michael Robin Walli, ) | |
| ) | |
| Defendants. ) | |

Before the Court is defendant Michael R. Walli's third Motion to Dismiss, filed on September 1, 2006. Defendants Kabat and Boertje-Obed have joined in the motion.[1] The Court has previously denied a pro se motion by Walli on the same grounds. See Docket No. 70. The Court has previously found that the indictment was legally sufficient according to the standards adopted by the Eighth Circuit. See Docket No. 66. The defendants were allegedly involved in a ceremonial protest at a Minuteman III missile site near Garrison, North Dakota, on June 20, 2006.[2]

---

[1] On August 31, 2006, Defendants Kabat and Boertje-Obed filed a document entitled "Motion to Join Bill Quigley's Motion to Dismiss." See Docket No. 84. William Quigley was granted leave to appear as Defendant Walli's counsel on August 17, 2006. The Court assumes Defendants Kabat and Boertje-Obed intend to join in the motion to dismiss as to Defendant Walli, which was filed by his counsel William Quigley the following day.

[2] The following detailed description of the nuclear protest is found on the organizations' Jonahhouse.org website.

"Weapon of Mass Destruction Here Plowshares"

A brief account of the disarmament action at Launch Facility E-9 Minuteman III nuclear weapon of mass destruction site in McLean County, North Dakota

The Holy Spirit brought three men dressed as circus clowns to the site on the morning of June 20, 2006. We three—Father Carl Kabat, O.M.I., Greg Boertje-Obed, and Michael Walli—proceeded to do the works of peacemaking that God had called upon us to do. Banners were fastened to the outside of the fence that enclosed the launch facility. These banners read:

• Weapon of Mass Destruction Here Plowshares
• Swords into Plowshares, Spears into Pruning Hooks –Isaiah
• Nuclear Disarmament Begins at Home
• It's a sin to build a nuclear weapon

We laid one banner on the ground inside the launch facility which read, "Why do you do this evil thing? Your brother's blood cries out from the ground."

We cut the chain on the gate with a pair of bolt cutters. We then entered and did various works: The entry hatch cover was found unlocked and we hammered the inside dial lock. The concrete silo lid was chipped in one spot by hammering. Blood was poured on the silo lid and the white upright motion detector, and it was visible from the road. Spray painting was done on the lid. Some of the spray-painted messages read:

• Stop nuclear terrorism here
• Disarm weapons of genocide
• Disarm our hearts
• Disarm now
• It is a sin to build a nuclear weapon
• God is not the author of confusion
• Peace is the fruit of justice
• The truth shall set you free
• Oppose the Culture of Death –Pope John Paul II
• If you want peace, work for justice –Pope Paul VI

In addition, various items were left as evidence near the silo lid and around the site:

• Two New Testaments
• Two rosaries
• One copy of the Declaration of Independence and one copy of the U.S. Constitution
• A folder of legal documents pointing to the criminality of U.S. government noncompliance with its own binding obligations under the U.S. constitution.

About 45 minutes after our arrival, a Huey-type helicopter was sighted. It cautiously approached and we could see a machine-gunner in the copter. While it continued to scour the surrounding farmland, a ground vehicle approached. At this time we put bread and wine (in a bottle) on the ground, knelt, joined hands, blew whistles, and sang "Vine and Fig Tree" and "Peace Is Flowing like a River." About 20 heavily armed U.S. Air Force employees approached us—unarmed and nonviolent Christians—and we complied with a slow, tedious arrest procedure.

Initially, two Air Force people drove up to the scene and took us into custody. As more military arrived, the confusion multiplied. At one point we had been ordered to lie face down and two sets of handcuffs were placed on us with our hands behind our backs. When a higher-ranking person came, the order was given that the three of us be marched down the road and be placed 500 feet apart so that we could not communicate with each other. Soldiers began to push us ahead, saying "Faster, faster," and then those in front were ordered to stop because we were supposed to keep together as we marched. The urgency led them to march Greg down the gravel road with only one sandal on. About 50 feet later, the county police drove up, adding to the confusion. They promptly placed Greg and Michael together in the back of a police car, where they were allowed unlimited communication.

One county officer went through the items that had been taken from us. He asked Michael and Greg what was in a small metal case. We said we thought it held Carl's glasses. We repeated ourselves, but the officer picked them up gingerly with two fingers and walked quickly about 100 feet toward the silo, put them in the tall grass by the side of the road, and ran back to the vehicles. He informed us later that the county police have different policies from the military, implying that

In the current motion, Walli asserts that, according to several international treaties and agreements, the indictment should be dismissed. Walli asks that the Court either (1) dismiss the charges, (2) allow all the evidence and testimony referenced in the motion to be introduced at trial,[3] or (3) allow an evidentiary hearing so that a record may be made.

On September 1, 2006, the Government filed a response, opposing the motion to dismiss. See Docket No. 94. The Government cites to a litany of similar cases and concludes that the Defendants' arguments cannot support dismissal of an indictment, do not create a framework for related jury instructions, and are not admissible evidence.

Although Walli's current motion is a lengthier version of his previous motions, it contains the same basic fatal flaw – the laws of the United States do not support the theory that an individual has a right or a responsibility to correct a perceived violation of international law/humanitarian law/tribal law/religious law by willfully destroying government property. See United States v.

---

the Air Force people were not sufficiently trained. Carl was not allowed to receive his glasses for at least another two days, as the police later said they were going to be mailed to the county jail.

A Native American law enforcement vehicle then transported the three of us through an impoverished Native American town called White Shield to a town called Garrison. At least four law enforcement jurisdictions were involved in the apprehension of three clowns. At Garrison, questions were asked by the FBI. In the afternoon we were transported to the McLean County Jail in Washburn , ND . Nine days later we were moved to the Burleigh County Detention Center, PO Box 1416, Bismarck ND , 58502 . We made an appearance in federal court, and another court date is scheduled for July 5th.

Carl Kabat, OMI, Greg Boertje-Obed, Mike Walli

[3]Attached as exhibits are the following: Exhibit 1 – Testimony of Mayor Takashi Hiraoka of Hiroshima, before the International Court of Justice at the Hague, November 7, 1995; Exhibit 2 – The Opinion of the International Court of Justice in the Hague on the Legality of Threat or Use of Nuclear Weapons, July 8, 1996; Exhibit 3 – "U.S. Nuclear Forces, 2006" published in the Nuclear Notebook Bulletin of Atomic Scientists, January/February 2006 and "U.S. Nuclear Forces, 2005" published in the Nuclear Notebook, Bulletin of Atomic Scientists, January/February 2005; and Exhibit 4 – Declaration of Professor Francis A. Boyle dated August 28, 2006.


Kabat, 797 F.2d 580, 583 (8th Cir. 1986); see also United States v. Platte, 401 F.3d 1176, 1179-88 (10th Cir. 2005); United States v. Urfer, 287 F.3d 663, 664-65 (7th Cir. 2002); United States v. Maxwell, 254 F.3d 21, 26-30 (1st Cir. 2001); United Stats v. Komisaruk, 885 F.2d 490, 493-94 (9th Cir. 1989); United States v. Allen, 760 F.2d 447, 453 (2d Cir. 1985); United States v. Dorrell, 758 F.2d 427, 430-34 (9th Cir. 1985); United States v. Seward, 687 F.2d 1270, 1274-77 (10th Cir. 1983); United States v. Cassidy, 616 F.2d 101, 102 (4th Cir. 1979); United States v. Brodhead, 714 F. Supp. 593, 597-98 (D. Mass. 1989).  The Court finds that Walli has failed to set forth a basis to dismiss the indictment.

As to Walli's request that the Court allow all the evidence and testimony referenced in the motion to be introduced at trial or allow an evidentiary hearing so that a record may be made, the Court finds it unnecessary to hold an evidentiary hearing.  The motion to dismiss and the exhibits are part of the record.

Finally, Walli's request to allow the evidence and testimony offered in support of the motion to dismiss (see footnote n.3) to be introduced at trial, will be treated as a motion in limine.  Rule 402 of the Federal Rules of Evidence states:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.  In United States v. Platte, 410 F.3d 1176 (10th Cir. 2005), a case nearly identical to this matter, the Tenth Circuit upheld a district court's order that, in the absence of an offer of proof accepted by the court, prohibited evidence, jury voir dire, jury instructions, and argument regarding:

any defense based on necessity or violation of international law or that impugns, *inter alia*, the lethality, legality, morality, or political wisdom of the Minuteman III missile system, including but not limited to, the following variously described defenses: necessity; duress; choice of evils; privilege; justification; "Nuremberg"; mistake of law; good faith exception to mistake of law; international law violation; *jus cogens* violations; peremptory norms of international law violations; war crimes violations; customary international law violations; nonderogable *jus cogens* norms of customary international law violations; international humanitarian law violations; U.S. Army Field Manual violations; treaty violations; United Nations Charter violations; Vienna Convention violations; Restatement of Foreign Relations Law violations; Geneva Convention or Protocol violations; and/or Tokyo Judgment violations[.]

Id. at 1179.

After a thorough review of the entire record, and in light of the Court's previous finding that the Defendants' arguments are not recognized legal defenses to the crime charged, the Court finds that the Defendants have failed to set forth the relevancy of such evidence. As a result, and absent an offer of proof which is accepted by the Court, the Defendants will be prohibited from (1) asserting any of the above-enumerated legal defenses, (2) presenting evidence relating to the content of the exhibits attached in support of Walli's motion to dismiss, and (3) presenting the proposed testimony of Professor Francis A. Boyle.

The Court **DENIES** the Defendant Walli's third Motion to Dismiss (Docket No. 87) and Defendants' Kabat and Boertje-Obed's motion joining Walli's motion (Docket No. 84).

**IT IS SO ORDERED**.

Dated this 5th day of September, 2006.

                                                */s/ Daniel L. Hovland*
                                                Daniel L. Hovland, Chief Judge
                                                United States District Court